**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION**

FILED

GATEWAY, INC.,                                        )
                Plaintiff,                    )
                                )      CIV. 04-*4055*
vs.                                                                )
                                )
ENER1, INC. a Florida corporation,        )      **COMPLAINT**
f/k/a Inprimis, Inc., f/k/a Boca Research, Inc.;   )
and BOCA GLOBAL, INC., a Florida          )
corporation;                                               )
                                )
              Defendants.                 )
                                )
                                )
                                )
                                )
                                )

COMES NOW the Plaintiff Gateway, Inc. ("Gateway") f/k/a Gateway 2000, Inc.,

and for its Complaint against Defendants Ener1, Inc. f/k/a Inprimis, Inc. f/k/a Boca

Research, Inc. and Boca Global, Inc., states and alleges:

## INTRODUCTION

     1.     This is an action for money damages arising out of the actions of the

Defendants in relation to contracts between Gateway and the Defendants.  Defendants, or

their predecessors, sold products to Gateway and agreed to indemnify Gateway in the

event those products infringed upon any patent or copyright.  Gateway was sued for patent

infringement relating to the products sold by Defendants (or their predecessors) to

Gateway.  Gateway provided notice of the patent infringement litigation to Defendants

and Defendants failed to defend the litigation or to indemnify Gateway.  As a result

thereof, Gateway has suffered substantial injury and damages in the form of monies paid by Gateway to settle the patent infringement litigation, and other costs and expenses incurred in the defense of the patent litigation.

2.      Gateway contends, in the alternative, that Gateway and Defendants resolved and settled their dispute, but Defendants have materially breached the settlement agreement. As a result, Gateway is entitled to damages or specific performance.

## PARTIES

3.      Plaintiff Gateway is a Delaware corporation with significant operations and facilities in Sioux Falls (Minnehaha County) and North Sioux City (Union County), South Dakota.

4.      The principal business of Gateway is the sale of computers and related products and services.

5.      On information and belief, Boca Research, Inc. is a Florida corporation and is the parent company to Boca Global, Inc. ("Boca Global"), a wholly owned subsidiary. Boca Research, Inc. changed its name to Inprimis, Inc., and later changed its name to and is now known as Ener1, Inc., a Florida corporation (Ener1, Inc., formerly known as Inprimis, Inc., and formerly known as Boca Research, Inc. will be referred to herein as "Boca Research"). The principal place of business of Boca Research and Boca Global is 500 West Cypress Road, Suite 100, Ft. Lauderdale, FL 33309. On information and belief, Boca Research and Boca Global is or was in the business of supplying software and technology for personal computers.

2

6.     On information and belief, Boca Global acquired the assets and modem business of Global Village Communication, Inc. ("Global Village"), and assumed the liabilities of Global Village on or about June 18, 1998.

7.     Enerl, Inc., formerly known as Inprimis, Inc. and formerly known as Boca Research allowed Boca Global to be administratively dissolved by the Florida Secretary of State in October, 2002.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this matter.  This is a civil action between citizens of different states in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332.

9.     This Court has jurisdiction over Boca Global as previously determined by this Court in the matter of Gateway, Inc. v. Aveo, Inc., Boca Research, Inc., and Boca Global, Inc., Civ. 00-4076, US District Court for the District of South Dakota (Southern Division) (hereinafter "Prior Litigation").  Under the theory of successor liability of a parent corporation for a wholly owned subsidiary, this Court has jurisdiction over Boca Research.  In addition, this Court has personal jurisdiction over Boca Research and Boca Global by virtue of their negotiation with Gateway of a contract to be performed within the state of South Dakota, namely, the negotiation of the settlement of the Prior Litigation, and Boca Research's tender of a check to Gateway as a partial payment of the settlement of the Prior Litigation.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

3

## FACTUAL BACKGROUND – BOCA RESEARCH AND BOCA GLOBAL

10.     On or about April 17, 1995, Gateway and Global Village entered into a

Software License Agreement ("Global Village Agreement") whereby Global Village sold

to Gateway certain software designed to enable computers to perform telephone

functions.  In compliance with the Global Village Agreement, Gateway used the Global

Village software as a component in computers sold by Gateway.

11.     Section 7 of the Global Village Agreement sets forth provisions regarding

patent and copyright indemnification.  Section 7 of the Global Village Agreement

provides, in relevant part, as follows:

> Global Village shall indemnify and hold Gateway harmless from any
> costs, damages and settlement against Gateway (including hourly
> costs for in-house legal services at One Hundred Twenty-Five
> Dollars ($125.00 per hour) for any action based on infringement or
> misappropriation of any copyright, trademark, or trade secret as a
> result of the use or distribution of a current, unaltered version of the
> Programs; provided, however, that Global Village is promptly
> notified in writing of an such suit or claim, and further provided that
> Gateway permits Global Village to defend, compromise, or settle
> same, and provides all available information and reasonable
> assistance to enable Global Village to do so.  The foregoing states
> the entire liability of Global Village with respect to infringement or
> misappropriation of any Property Rights by the Program.
>
> Global Village further warrants that if Gateway is enjoined from
> using the Programs due to an actual or claimed infringement of any
> trade secret, trademark, patent right, or other property right as set
> forth in this Section 7, or for any other reason, then Global Village
> agrees to pursue the following remedies and Global Village further
> agrees to pursue both (i) and (ii) as remedies before option (iii):
>
>> (i)     procure for Gateway, at Global Village's expenses, the
>>         right to continue to use the Programs; or

4

(ii)     replace or modify the Programs, at Global Village's expense, so that the Program become non-infringing; or

(iii)    terminate this Agreement and return to Gateway the lesser of two (2) times the amount of Software License Fees paid to Global Village by Gateway over the course of the preceding twelve (12) months or actual Software License Fees paid to Global Village by Gateway during the course of this Agreement, in the event that neither (i) or (ii) are reasonably feasible.

Notwithstanding Section 7A, Global Village shall have no liability for any infringement based on: (i) the modification of the Programs by any party other than Global Village; (ii) the combination or use of the Programs with other software, items or processes not furnished by Global Village if such infringement would have been avoided by the use of the Programs alone. This Section 7 states Global Village's entire liability to Gateway with respect to infringement of third parties' rights.

12.     On or about December 6, 1995, the parties entered into Addendum 1 to the Global Village Agreement whereby Exhibit A, the identified software program, was replaced with a new Exhibit A. All other terms and provisions remained in full force and effect.

13.     The Global Village Agreement was extended, and was then extended a second time by an extension dated effective June 30, 1998, whereby the parties agreed to extend the term of the Global Village Agreement to and including June 30, 1999. The signature block for the second extension identifies "Global Village" as a party to the extension.

14.     On information and belief, at the time "Global Village" executed the second extension, Boca Global had acquired the assets and assumed the liabilities of Global Village.

5

## DESCRIPTION OF PHONETEL LITIGATION

15.     On or about May 4, 1998, Gateway received a notice of a patent infringement claim from PhoneTel Communications, Inc. ("PhoneTel"). PhoneTel alleged in that notice that products sold by Gateway infringed on patents owned by or assigned to PhoneTel.

16.     After reviewing the notice of patent infringement claim sent by PhoneTel, Gateway determined that at least part of the patent infringement claims being asserted against Gateway by PhoneTel related to or arose from the products supplied to Gateway by Global Village.

17.     Gateway timely notified Global Village of the claims asserted by PhoneTel and timely notified Global Village of Global Village's obligation to indemnify, hold harmless and defend Gateway from and against any and all damages, costs and expenses resulting from the PhoneTel allegations.

18.     Global Village advised Gateway that Global Village refused to accept any responsibility or duty to defend the claim of PhoneTel.

19.     On or about September 18, 1998, PhoneTel filed a "Fourth Amended Complaint" naming Gateway as a defendant in the action entitled PhoneTel Communications, Inc. v. Gateway 2000, Inc., et al. in the United States District Court for the Northern District of Texas, Fort Worth, Division, C.A. No. 4-98-CV-0019 ("PhoneTel Litigation") and asserting that Gateway had infringed certain United States patents.

6

20.     Thereafter, on January 28, 1999, the Judge in the PhoneTel Litigation required that PhoneTel provide detailed claim charts to Gateway identifying with specificity the products and structure of each product allegedly corresponding to each claim asserted against that product.

21.     Upon receipt and review of the court-ordered detailed claim charts submitted by PhoneTel, Gateway timely notified Global Village and Boca Research in March of 1999 that Global Village's telephony software and specifically Global Village's "FaxWorks" product were clearly set forth in the claim charts and that PhoneTel's patent infringement claims arise out of use and distribution of the products that Global Village sold to Gateway.  Gateway again demanded that Global Village perform its obligation to indemnify and hold Gateway harmless from any costs, damages, and settlements including attorney fees, relating to or resulting from the PhoneTel Litigation.

22.     Global Village denied in writing any obligation or duty to indemnify Gateway regarding the allegations of PhoneTel in the PhoneTel litigation.

23.     As a result of the refusal of Global Village to perform its indemnification obligation and defend the PhoneTel litigation, Gateway undertook the defense of the PhoneTel Litigation, reserving all of its rights against Global Village.

24.     On September 20, 1999, Gateway entered into a settlement agreement with PhoneTel.

25.     Gateway again notified Global Village, Boca Global and Boca Research of their obligation and duty to indemnify Gateway as regards the PhoneTel Litigation, but to

7

date, Global Village, Boca Global and Boca Research, and their successor corporations, have refused to perform their obligation and duty to do so.

26.     Gateway has performed all the conditions of the contract between Gateway and Global Village, Boca Global and Boca Research to be performed by Gateway.

27.     Global Village, Boca Global and Boca Research have failed and refused, and continue to fail and refuse, to pay Gateway under the indemnification provisions of the contract between Gateway and Global Village.

## FACTUAL BACKGROUND – SETTLEMENT AGREEMENT BETWEEN GATEWAY AND BOCA RESEARCH AND BOCA GLOBAL

28.     On or about, April 21, 2000, Gateway commenced Prior Litigation against Boca Research, Inc. and Boca Global, Inc. in federal district court in South Dakota alleging breach of contract, tortious breach of duty, and unjust enrichment.

29.     On or about May 2002, Gateway, Boca Research and Boca Global negotiated and resolved its dispute and negotiated the terms and provisions of a Settlement Agreement and Mutual Release, a copy of which is attached hereto as Exhibit A ("herein the "Settlement Agreement").

30.     Under the terms of the Settlement Agreement, Boca Research and Boca Global agreed to pay Gateway the sum of Fifty Thousand Dollars ($50,000.00).

31.     Robert Carlson, attorney and agent for Boca Research and Boca Global,  in a letter dated May 24, 2002, to Roger Taylor, attorney for Gateway, (a copy of which is attached as Exhibit B) stated that Boca Global and Boca Research agreed to the modification of the written Settlement Agreement, that Mr. Carlson was forwarding the

8

Settlement Agreement to his client Boca Research and Boca Global "for execution by the appropriate person," and enclosed in the letter a check payable by Boca Research to Gateway in the amount of $5,000.00, which represented the first payment by Boca Research and Boca Global under the terms of the Settlement Agreement.

32.    To the best information and knowledge of Gateway, Boca Research and Boca Global have failed to execute the Settlement Agreement or have failed to provide Gateway with a copy of the executed Settlement Agreement.

33.    It was Gateway's understanding that the matter had been settled, but Boca Research and Boca Global have materially defaulted under the terms of the Settlement Agreement by failing and refusing to make the remaining payments totaling $45,000, pursuant to the settlement agreement, as Gateway has demanded.

34.    Boca Research and Boca Global knew or should have known that Boca Research and Boca Global might have an obligation as a result of the Prior Litigation and/or Settlement Agreement, but nevertheless, Boca Research allowed Boca Global to be administratively dissolved by the Florida Secretary of State, without notice to Gateway and all to the detriment of Gateway.

35.    On information and belief, Boca Research is the parent and/or successor of Boca Global and is therefore liable for any liabilities of Boca Global, including without limitation, the liability of Boca Global to Gateway as set forth in this Complaint.

36.    Because there was improper conduct by Boca Global and Boca Research in the transformation (or dissolution) of Boca Global which was used to avoid the liabilities of Boca Global, the corporate veil of Boca Global should be pierced.

9

37.     Upon information and belief, Boca Research controls or did control its subsidiary, Boca Global, to such a degree as to render Boca Global the mere instrumentality of Boca Research.

38.     Upon information and belief, adherence to the rule of corporate separateness would produce injustice and inequities.

## COUNT I

### (Breach of Contract)

39.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.     Gateway and Global Village entered into a contract whereby Global Village promised, both expressly and implicitly by its conduct, to indemnify and hold Gateway harmless from any costs, damages, and settlements including legal fees, relating to or resulting from the PhoneTel Litigation.

41.     Global Village materially breached its contractual obligations to Gateway.

42.     As a direct result of Global Village's material breach of contract, Gateway has suffered substantial injury and damages, including without limitation the amounts paid by Gateway to settle the PhoneTel Litigation, the attorney fees of outside counsel, the allocated costs for in-house legal services, and costs and expenses.

43.     Boca Research (including its successor Enerl, Inc.) and Boca Global are liable for the debts, obligations and liabilities of Global Village.

10

## COUNT II

### (Tortious Breach of Duty to Act in Good Faith and Fair Dealing)

44.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.    As a result of the relation or state of facts created by the contract between Global Village and Gateway, Global Village had an implied duty of good faith and fair dealing with Gateway.

46.    The contract between Global Village and Gateway established a relationship demanding exercise of proper care and fair dealing, and acts and omissions in the performance thereof give rise to tort liability.

47.    Global Village, Boca Research (and its successor Ener1, Inc.) and Boca Global breached their duty to act in good faith with Gateway and to fairly deal with Gateway by negligently or intentionally failing to comply with indemnification provisions of the contract existing between Global Village and Gateway.  Global Village, Boca Research (and its successor Ener1, Inc.) and Boca Global do not have a reasonable basis for failing to indemnify Gateway, and knew, or should known, that there is no reasonable basis for failing to indemnify Gateway.

## COUNT III

### (Restitution/Equitable Relief)

48.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 47 of this Complaint as if fully set forth herein.

11

49.     In the alternative, Gateway paid Defendants for software that was not totally beneficial or of value to Gateway.

50.     Defendants knew or should have known that their products would be used in combination with products of other suppliers, and in fact, Defendants designed, tested, and produced their products to be compatible for use with products from other suppliers.

51.     Defendants knew, or reasonably should have known, of Gateway's intended and actual use of Defendants' product in combination with products from other suppliers.

52.     The allegations against Gateway in the PhoneTel Litigation arose out of Gateway's use of Defendants' products, or the use of Defendants' products in combination with the products of other suppliers.

53.     To permit Defendants to retain the sums paid to them by Gateway would permit Defendants to enrich themselves unjustly.

54.     To allow Defendants to refuse to indemnify Gateway for the amounts paid or expenses incurred by Gateway in the PhoneTel Litigation unjustly enriches Defendants and violates the principles of equity.

55.     Under the principles of equity, the doctrine against unjust enrichment, and public policy, Gateway is entitled to restitution and indemnification from Defendants of all or a part of the sums paid by Gateway to Defendants and for the amounts paid by Gateway or expenses incurred by Gateway in the PhoneTel Litigation.

12

56.     To allow Defendants to avoid liability for their actions and their failure to act violates the principles of equity, the doctrine against unjust enrichment, and public policy.

## COUNT IV

### (Breach of Contract)

57.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.     In the alternative, Gateway contends that Boca Research and Boca Global are liable to Gateway for money damages as follows:  Gateway entered into a settlement agreement and mutual release with Defendants Boca Research and Boca Global which provided that Boca Research and Boca Global "shall pay a total of $50,000 to Gateway. Said payment shall be made in ten (10) equal monthly installments of $5,000.00.  The payments shall be delivered to Gateway starting no later than May 31, 2002, with each subsequent installment payment made no later than the last day of each subsequent month."

59.     Boca Research and Boca Global paid an initial payment of $5,000.00 in or about May 2002.  Boca Research and Boca Global failed to make further payments.

60.     Gateway demanded payment pursuant to the terms of the settlement agreement and Boca Research and Boca Global refused to pay.

61.     Boca Research and Boca Global materially breached their contractual obligations to Gateway.

62.     The express terms of the settlement agreement provide: "In the event [Boca

13

Research and Boca Global] shall materially default upon such payments, the amount due to Gateway shall be deemed to be $1,500,000.00, less all amounts actually received by Gateway pursuant to this Agreement."

63.     As a direct result of Boca Research and Boca Global's material breach of contract, Boca Research and Boca Global owe Gateway the sum of $1,495,000.00, plus interest.

64.     In the alternative, and at a minimum, Boca Research and Boca Global owe Gateway specific performance in the sum of $45,000.00, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.     On Count I, awarding Plaintiff damages in an amount to be proved at trial, including without limitation the amount paid by Gateway to settle the PhoneTel Litigation, amounts paid by Gateway to outside counsel relating to or regarding the PhoneTel litigation, the cost of Gateway's in-house counsel relating to or regarding the PhoneTel Litigation, and Gateway's costs and expenses related thereto;

2.     On Count II, awarding Plaintiff damages in an amount to be proved at trial including without limitation the amount paid by Gateway to settle the PhoneTel Litigation, amounts paid by Gateway to outside counsel relating to or regarding the PhoneTel litigation, the cost of Gateway's in-house counsel relating to or regarding the PhoneTel Litigation, and Gateway's costs and expenses related thereto;

3.     On Count III, in the alternative, awarding Plaintiff damages in an amount to be proved at trial, including without limitation the amount paid by Gateway to

14

Defendants for the software, together with the amount paid by Gateway to settle the PhoneTel Litigation, amounts paid by Gateway to outside counsel relating to or regarding the PhoneTel Litigation, the cost of Gateway's in-house counsel relating to or regarding the PhoneTel Litigation, and Gateway's costs and expenses related thereto;

4.   On Count IV, in the alternative, awarding Plaintiff damages in an amount to be proved at trial, including $1,495,000.00 plus interest, pursuant to the settlement agreement and mutual release;

5.   On Count IV, in the alternative, awarding Plaintiff damages in an amount to be proved at trial, including $45,000.00 plus interest, pursuant to the settlement agreement and mutual release;

6.   Awarding Plaintiff its costs, disbursements, prejudgment interest, and such other and further relief as the Court may deem just and proper.

Dated this _28th_ day of April, 2004.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

BY:_____
   Lee A. Magnuson
   141 N. Main Avenue, Suite 900
   P.O. Box 1920
   Sioux Falls, SD 57101-3020
   (605) 332-5999

ATTORNEYS FOR PLAINTIFF